Clarence HART, Plaintiff,

v.

COUNTY OF ALAMEDA, Alameda County Probation Department, Defendants.

No. C–79–0091 WHO.

United States District Court, N. D. California.

Sept. 6, 1979.

Prudence Kay Poppink, Kenneth Hecht, Employment Law Center, San Francisco, Cal., Robert J. Funk, Disability Law Resource Center, Center for Independent Living, Berkeley, Cal., for plaintiff.

Richard J. Moore, County Counsel, County of Alameda, Oakland, Cal., for·defendants.

## OPINION

ORRICK, District Judge.

By their Federal Rule of Civil Procedure 12(b)(6) motion to dismiss the complaint, defendants raise the question, not heretofore addressed in this Circuit, whether handicapped persons may· enforce, through a private cause of action, the provisions of Sections 503 and 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §§ 793,[1] 794,[2] which generally prohibit discrimination against handicapped individuals by federal contractors or by programs receiving federal fiscal assistance, or of Section 122 of the State and Local Fiscal Assistance Act of 1972, as amended ("Revenue Sharing Act"), 31 U.S.C. § 1242,[3] which prohibits such discrimination by recipients of federal revenue sharing funds. For the reasons herein stated, the Court denies defendants' motion, for it appears that Congress fully intended those statutory provisions to be privately enforced.

### I.

The facts relevant to this motion are few and simply stated. Plaintiff, Clarence Hart, a "controlled" epileptic, has for the past several years volunteered his services as a group counselor to the defendant Alameda County Probation Department ("the Department") through its "Volunteers in Probation" program. In May, 1977, Hart applied to the Department for permanent employment as a group counselor. He claims that, although he passed the civil service examination and was placed on the eligibility list, he was refused employment solely because of his handicap.[4] He further contends that because defendant County of Alameda ("the County") is a "unit of local government" which contracts with the United States, and because both the County and the Department receive federal revenue sharing and other federal fiscal assistance, their refusal to hire him for discriminatory reasons violates Sections 503 and 504 of the Rehabilitation Act, as well as Section 122 of the Revenue Sharing Act.

---

1. Section 503 provides, in pertinent part:

 "Any contract in excess of $2,500 entered into by any Federal department or agency for the procurement of personal property and nonpersonal services (including construction) for the United States shall contain a provision requiring that, in employing persons to carry out such contract the party contracting with the United States shall take affirmative action to employ and advance in employment qualified handicapped individuals as defined in section 706(7) of this title." 29 U.S.C. § 793(a) (Supp.1979).

2. Section 504 provides:

 "No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794 (Supp.1979).

3. Section 122 declares in pertinent part:

 "No person in the United States shall, on the ground. of race, color, national origin, or sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity of a State government or unit of local government, which government or unit receives funds made available under subchapter I of this chapter. Any prohibition against discrimination on the basis of age under the Age Discrimination Act of 1975 or with respect to an otherwise qualified handicapped individu·al as provided in section 794 of Title 29 shall also apply to any such program or activity." 31 U.S.C. § 1242(a)(1) (Supp.1979).

4. Although he is a "controlled" epileptic, Hart does not possess a valid California driver's license. According to the complaint, this is the ground upon which the Department refused to hire him.

Defendants contend that none of the above-cited provisions authorizes, expressly or impliedly, a private right of action upon which plaintiff can rely.[5] Accordingly, the Court now must examine carefully each statute to determine whether it can be enforced by a private right of action.

## II.

At the outset it should be noted that neither Sections 503 nor 504 of Title V of the Rehabilitation Act expressly provides for a private right of action. The Court must therefore determine whether or not such a remedy is implicit in either statute. In this task, which is purely one of statutory construction, the Court is guided by the principles announced in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975):

> "In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted,' . . . that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? . . . And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?" (Citations omitted.)

In *Cort*, applying this analysis, a unanimous Court held that a shareholder could *not* maintain a private action against corporate directors for violations of 18 U.S.C. § 610, a criminal statute prohibiting corporations from making contributions or expenditures in connection with certain federal elections.

The continuing vitality of the analysis set forth in *Cort* was recently confirmed in *Cannon v. University of Chicago*, 441 U.S. 677, 685, 99 S.Ct. 1946, 1951, 60 L.Ed.2d 560 (1979), in which the Court inferred a private remedy from Title IX of the Education Amendments of 1972 ("Title IX") in favor of women seeking admission to education programs receiving federal financial assistance.

With respect to the first and fourth factors of the *Cort* approach, Sections 503 and 504 need not be considered separately, for the analysis is identical for both. First, there exists no question whatsoever that handicapped persons are the class "for whose *especial* benefit the [statutes were] enacted." *Lloyd v. Regional Transportation Authority*, 548 F.2d 1277, 1284 (7th Cir. 1977); *Rogers v. Frito-Lay, Inc.*, 433 F.Supp. 200, 202 (N.D.Tex.1977). Extensive congressional hearings prior to the enactment of the Rehabilitation Act disclosed the failure of existing programs to serve the needs of handicapped persons. S.Rep. No. 93–318, 93d Cong., 1st Sess., *reprinted in* [1973] U.S.Code Cong. & Ad.News 2076, 2078. Congress strongly believed that the legislation was necessary "to deal with [the] problems of discrimination [against handicapped persons] in Federal employment and Federal grants and contracts * * *." *Id.* at 2079. Consequently, the final legislation boldly declared as one of its broad purposes:

> "[to] promote and expand employment opportunities in the public and private sectors for handicapped individuals and to place such individuals in employment; * * *." 29 U.S.C. § 701(8) (1975).

There is likewise no question that plaintiff, a "controlled" epileptic, is a "handicapped individual" within the terms of the Act. 29 U.S.C. § 706(7) (Supp.1979); *Drennon v. Philadelphia General Hospital*, 428 F.Supp. 809, 815 (E.D.Pa.1977).

---

5. Defendants also contend that, because a class action cannot be maintained on behalf of handicapped persons, certain injunctive relief requested by plaintiff is unavailable. This matter was not filed as a class action, nor does plaintiff seek to represent anyone but himself. As to the appropriateness of injunctive relief, that question is better left until after the liability issues have been resolved.

Second, it cannot seriously be contended that discrimination against handicapped persons is a matter "traditionally relegated to state law, in an area basically the concern of the States." *Lloyd v. Regional Transportation Authority, supra,* 548 F.2d at 1286–87; *Drennon v. Philadelphia General Hospital, supra,* 428 F.Supp. at 815. Since enactment of the Civil War Amendments, it has been clear that "the Federal Government and the federal courts have been the '*primary* and powerful reliances'' in protecting citizens against * * * discrimination [of any sort]." *Cannon v. University of Chicago, supra,* 441 U.S. at 708, 99 S.Ct. at 1963. Federal interest is even more obvious where, as here, the factor which triggers application of the statute is the existence of federal fiscal assistance to public and private entities. *Id.* at 708, 99 S.Ct. at 1963. With respect to the plight of handicapped persons in employment, California's first foray into this area occurred in 1973, contemporaneously with federal lawmaking. Cal.Lab.Code § 1420 (Deering Supp.1979).

It thus appears that, as is often the case, the outcome of this inquiry will depend largely upon the second and third factors set forth in *Cort*: whether there is any indication of legislative intent to create or deny such a remedy, and whether implication of a private remedy is consistent with the underlying purposes of the legislative scheme. As to these criteria, it is necessary to examine each statute separately.

### A. The Section 504 Claim

Section 504 of the Rehabilitation Act provides that no "qualified handicapped individual" shall be "excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance * * *." As part of the Rehabilitation, Comprehensive Services, and Developmental Disabilities Amendments of 1978 (the "1978 Amendments"), discussed in some detail below, Congress made available to any person aggrieved by a violation of the section the "remedies, procedures and rights" available under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d ("Title VI"). Pursuant to statute, the Department of Health, Education and Welfare ("HEW") has promulgated regulations which establish, *inter alia,* an administrative complaint and investigation procedure. 45 C.F.R. §§ 84.61, 80.6–80.10 (1978). The administrative sanctions available for violation of Section 504 include termination of federal assistance and referral to the Department of Justice "with a recommendation that appropriate proceedings be brought to enforce any rights of the United States." *Id.* at § 80.8.

Although the Supreme Court has not yet addressed the issue,[6] this Court notes the nearly unanimous agreement among the circuits that Section 504 *does* create a private right of action in favor of handicapped persons. *NAACP v. Medical Center, Inc.,* 599 F.2d 1247, 1258 (3d Cir. 1979); *Davis v. Southeastern Community College,* 574 F.2d 1158, 1159 (4th Cir. 1978), *rev'd on other grounds,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979); *Lloyd v. Regional Transportation Authority, supra; Leary v. Crapsey,* 566 F.2d 863, 865 (2d Cir. 1977); *Kampmeier v. Nyquist,* 553 F.2d 296, 299 (2d Cir. 1977); *United Handicapped Federation v. Andre,* 558 F.2d 413, 415 (8th Cir. 1977); *see also, Whitaker v. Board of Higher Education,* 461 F.Supp. 99, 106–109 (E.D. N.Y.1978); *Drennon v. Philadelphia General Hospital, supra; Barnes v. Converse College,* 436 F.Supp. 635 (D.S.C.1977); *Vanko v. Finley,* 440 F.Supp. 656 (N.D.Ohio 1977); *Sites v. McKenzie,* 423 F.Supp. 1190 (N.D. W.Va.1976); *but cf. Trageser v. Libbie Rehabilitation Center, Inc.,* 590 F.2d 87 (4th Cir. 1978), *cert. denied,* 442 U.S. 947, 99 S.Ct. 2895, 61 L.Ed.2d 318 (1979). These cases have generally held, often following the analysis of the Seventh Circuit in *Lloyd v. Regional Transportation Authority, su-*

---

**6.** In *Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), a Section 504 action brought by a disappointed applicant to medical school, the Supreme Court bypassed the private remedy issue, and instead disposed of the case on its merits. *Id.* at [404–05, 99 S.Ct. 2366 n.5, 99 S.Ct. 2361, n.5.

pra, that because congressional intent to create such a private remedy was clear, and because the existence of such a remedy furthered the goals of the statute, a private right of action should be inferred. Following its review of the relevant material, this Court is in agreement.

The legislative history contemporary to the enactment of Section 504 in 1973 is devoid of much explanation; however, the history which accompanies subsequent amendments to the Act casts considerable light on the original congressional intent. This material makes absolutely clear that Congress intended there to be a private, judicial remedy for handicapped persons aggrieved by violations of Section 504. In recommending passage of the Rehabilitation Act Amendments of 1974 ("1974 Amendments"), the Senate Labor and Public Welfare Committee noted that:

"Section 504 was patterned after, and is almost identical to, the anti-discrimination language of section 601 of the Civil Rights Act of 1964, 42 U.S.C. 2000d-1 [Title VI] (relating to race, color, or national origin), and section 901 of the Education Amendments of 1972, 42 U.S.C. 1683 (relating to sex). The section therefore constitutes the establishment of a broad government policy that programs receiving Federal financial assistance shall be operated without discrimination on the basis of handicap." S.Rep. No. 93–1297, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad.News 6373, 6390.

Since there is little doubt today that Title VI impliedly creates a private right of action, *see Regents of the University of California v. Bakke*, 438 U.S. 265, 285, 418, 98 S.Ct. 2733, 2745, 2814, 57 L.Ed.2d 750 (1978); *Cannon v. University of Chicago, supra,* 441 U.S. at 692, 99 S.Ct. at 1955, the legislative decision to design Section 504 on the Title VI model is significant. Moreover, the Supreme Court has recognized that Congress, in 1973, was familiar with, and relied upon, various federal court decisions which had inferred the existence of such a remedy in Title VI. *Id.* at 692–696, 99 S.Ct. at 1955–1957.

That Congress intended Section 504 to authorize a private remedy similar to that available under Title VI is evidenced by the further comments of the Senate Labor and Public Welfare Committee:

"The language of section 504, in following the above-cited Acts, further envisions the implementation of a compliance program which is similar to those Acts * * *.

This approach to implementation of section 504, which closely follows the models of the above-cited anti-discrimination provisions, would ensure administrative due process (right to hearing, right to review), provide for administrative consistency within the Federal government as well as relative ease of implementation, and *permit a judicial remedy through a private action.*" S.Rep. No. 93–1297, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad.News 6373, 6390–91 (emphasis added).

And, as if such expressions were insufficient, Congress made its intention more explicit in 1978, when it amended the Act to provide:

"(a)(2) The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title.

(b) In any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 29 U.S.C. §§ 794a(a)(2), (b) (Supp.1979).

This express incorporation of Title VI remedies into Section 504, together with the addition of an attorneys' fee provision, leaves no doubt that Congress intended private enforcement of Section 504.

The existence of a private right of action is completely consistent with the goals of Section 504. Such a device places in the hands of those for whose benefit the statute

was enacted the means to vindicate important rights thereunder. Moreover, given the limited resources of HEW to pursue such claims, and the growing concern in this area, enforcement by "private attorneys general" would greatly strengthen the impact of the provision. *See Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S. 205, 211, 93 S.Ct. 364, 367, 34 L.Ed.2d 415 (1972).

■ Nor is the existence of a private remedy likely to frustrate the purposes of Section 504. In reaching this conclusion, the Court is fully cognizant of HEW regulations creating an administrative complaint and investigation procedure. 45 C.F.R. §§ 84.61, 80.6–80.10 (1978). Certainly, these remedies should be exhausted prior to the commencement of any action in federal court.[7] *Lloyd v. Regional Transportation-Authority, supra*, 548 F.2d at 1286; *Drennon v. Philadelphia General Hospital, supra*, 428 F.Supp. at 818. But as the court in *Whitaker v. Board of Higher Education, supra*, 461 F.Supp. at 107–108, correctly observed, the principal sanction available to HEW to enforce compliance is funding termination.[8] It is completely unrealistic to assume that this severe sanction will be freely exercised to remedy individual instances of discrimination. A private right of action, on the other hand, can bring about tailored, individual relief far superior to the extraordinary step of funding termination. And this Court is confident that the exhaustion requirement will protect the policy, reflected in the regulations, 45 C.F.R. §§ 80.7(d), 80.8(d) (1978), of encouraging pre-enforcement negotiation and conciliation. Indeed, it would appear that the potential for costly, time-consuming (for both parties) federal litigation would serve as a stimulus for settlement at the administrative stage.

In the face of these overwhelming factors in favor of implying a private cause of action, defendants argue, relying solely upon *Trageser v. Libbie Rehabilitation Center, Inc., supra*, 590 F.2d at 89,[9] that no private remedy is available under Section 504 for *employment* discrimination unless "a primary objective of the federal financial assistance is to provide employment." In other words, defendants would narrow the scope of the statute's prohibitions to embrace, in the case of employment discrimination, *only* those entities and programs which receive federal funds expressly intended to encourage the employment of handicapped persons. In *Trageser*, the court began by recognizing that the 1978 Amendments had accomplished two major changes relevant here: (1) the "remedies, procedures and rights" provided in Title VII of the Civil Rights Act of 1964 ("Title

---

**7.** Plaintiff has alleged facts which, if proven, are sufficient to satisfy the exhaustion requirement. He claims that he filed a complaint with the Department of Labor on January 12, 1978, which denied relief in June, 1978. This decision was allegedly appealed to the Director of the Office of Contract Compliance in July, 1978, where the matter has apparently been pending for more than a year.

**8.** The regulations do permit HEW to refer cases to Justice for appropriate action. 45 C.F.R. § 80.8(a) (1978). They are extremely vague on this point, however, and it is unclear how often such a cumbersome procedure would actually be invoked.

**9.** Defendants urge the Court to accord significance to the recent denial of *certiorari* in *Trageser*, 442 U.S. 947, 99 S.Ct. 2895, 61 L.Ed.2d 318 (1979). This the Court declines to do, for as Mr. Justice Frankfurter pointed out long ago:

"It is within the experience of every member of this Court that we do not have to, and frequently do not, reach the merits of a case to decide that it is not of sufficient importance to warrant review here. Thirty years ago the Court rather sharply reminded the Bar not to draw strength for lower court opinions from the fact that they were left unreviewed here. 'The denial of a writ of certiorari imports no expression of opinion upon the merits of the case, as the bar has been told many times.' . . . We have repeatedly indicated that a denial of certiorari means only that, for one reason or another which is seldom disclosed, and not infrequently for conflicting reasons which may have nothing to do with the merits and certainly may have nothing to do with any view of the merits taken by a majority of the Court, there were not four members of the Court who thought the case should be heard." *Brown v. Allen*, 344 U.S. 443, 491–92, 73 S.Ct. 397, 439, 97 L.Ed. 469 (1953).

VII"), 42 U.S.C. § 2000e, were made available for violations of Section 501 (prohibiting employment discrimination by the federal government); and (2) the "remedies, procedures and rights" provided under Title VI were made available for violations of Section 504. The court then noted the existence, in Title VI, of Section 604, which provides:

"Nothing contained in this subchapter shall be construed to authorize action under this subchapter by any department or agency with respect to any employment practice of any employer, employment agency, or labor organization except where a primary objective of the Federal financial assistance is to provide employment." 42 U.S.C. § 2000d–3 (1974).

The court reasoned that because Congress had chosen, with respect to Section 504, to make available the remedies of Title VI rather than those of Title VII, it had intended that the limitation contained in Section 604 would apply to Section 504 of the Rehabilitation Act as well. The court concluded:

"The distinction that [the Amendment] * * * draws between the relief available to federal employees and that available to employees of private institutions receiving federal assistance could not have been inadvertent. We therefore conclude that we must apply the limitation contained in § 604 of Title VI to § 504 of the Rehabilitation Act in literal compliance with § 120(a) of the 1978 amendments." *Id.* at 89 (footnote omitted).

This Court declines to follow the reasoning of the Fourth Circuit panel in *Trageser* which, in its view, requires two significant assumptions which this Court is unwilling to make. First, the *Trageser* court assumes, without citing any authority whatsoever, that although the language of Section 604 is directed only to enforcement actions by "any department or agency," it curtails private suits as well. In the absence of some suggestion that Congress intended such a broad result, this conclusion appears unfounded. Indeed, several courts, adjudicating private, employment discrimination actions under Title VI, have apparently ignored the provision. *Afro American Patrolmens League v. Duck*, 503 F.2d 294 (6th Cir. 1974); *Ortiz v. Bach*, 14 FEP Cases 1019 (D.Colo.1977); *but cf. Feliciano v. Romney*, 363 F.Supp. 656, 672 (S.D.N.Y.1973).

Second, and more important, *Trageser* takes the position that, in enacting the 1978 Amendments, Congress intended to *restrict* the scope of Section 504 by importing the limitations of Section 604. There is not a single word of legislative history to support such an inference; indeed, the overwhelming impression created by the legislative history of the 1978 Amendments is that Congress intended to *expand* the remedies available under the Act. Senator Cranston's comments are illustrative:

"Mr. President, I believe this amendment is much needed. To date, we have permitted certain private enforcement of title V and, yet, we have not provided the means by which such private rights of action are meaningful. This amendment—providing attorneys' fees on the same basis as attorneys' fees are provided under Public Law 94–559—will go a long way toward assisting long-neglected Americans—handicapped individuals—in their efforts to achieve their full and equal share of the rights to which they are entitled." 124 Cong.Rec. S15591 (daily ed., Sept. 20, 1978).

Furthermore, in light of the great emphasis which the Act places upon securing employment opportunities for handicapped individuals, it is remarkable to attribute to Congress a desire to gut this protection by such a deft, unheralded maneuver.

There exists a better explanation for the differences in congressional treatment of Sections 501 and 504. Because the former is concerned *exclusively* with discrimination in employment, Title VII provides the natural source of reference for the incorporation of remedies and procedures. For Section 504, on the other hand, which is intended to reach all forms of discrimination against handicapped individuals, *see Lloyd v. Regional Transportation Authority, supra*, the

proper analogue is Title VI, upon which, after all, Section 504 was patterned. Given the symmetry of language and purposes of the two enactments (*i. e.*, Section 504 of the Rehabilitation Act and Section 601 of Title VI, 42 U.S.C. § 2000d), it is hardly surprising that Congress, in supplementing the remedial aspects of Section 504, would look to Title VI as a model. This Court finds such reasoning far more plausible as an explanation of Congress' action than the hypotheses set forth in *Trageser.*

 The Court therefore holds, consistent with the great weight of authority elsewhere, that Section 504 may be enforced by plaintiff, who has satisfactorily pursued his available administrative remedies.

### B. *The Section 503 Claim*

Section 503 of the Act requires the inclusion, in any federal contract for an amount in excess of $2,500, of a provision requiring the contractor to "take affirmative action to employ and advance in employment qualified handicapped individuals" in the execution of the contract. The Act requires the President to promulgate regulations thereunder, and also expressly provides an administrative remedy:

> "(b) If any handicapped individual believes any contractor has failed or refuses to comply with the provisions of his contract with the United States, relating to employment of handicapped individuals, such individual may file a complaint with the Department of Labor. The Department shall promptly investigate such complaint and shall take such action thereon as the facts and the circumstances warrant, consistent with the terms of such contract and the laws and regulations applicable thereto." 29 U.S.C. § 793(b) (1975).

The Department of Labor has promulgated an extensive set of regulations which provide, *inter alia*, for agency investigation, negotiation, conciliation and, if necessary, judicial enforcement of agency sanctions. 41 C.F.R. §§ 60–741.1 *et seq.* (1978).

This provision presents somewhat more difficult problems of construction than does Section 504. In contrast to the situation there, judicial authority concerning the existence of a private right of action for violations of Section 503 is scarce: the court is aware of no circuit which has considered the issue, and the district courts which have addressed it are split. *Cf. Drennon v. Philadelphia General Hospital, supra,* to *Wood v. Diamond State Telephone Co.,* 440 F.Supp. 1003 (D.Del.1977); *Moon v. Roadway Express, Inc.,* 439 F.Supp. 1308 (N.D. Ga.1977); *Rogers v. Frito-Lay, Inc., supra.* Moreover, the extremely limited nature of the legislative history of Section 503 serves to compound the difficulty of the task.

Although the legislative history of Section 503 discloses no express intention either to create or to deny the existence of a private right of action, subsequent amendments to the Act, and their history, suggest that Congress may have *assumed* such a private remedy to exist. In discussing the 1974 Amendments, the Senate Labor and Public Welfare Committee commented as follows:

> "It is intended that sections 503 and 504 be administered in such a manner that a consistent, uniform, and effective Federal approach to discrimination against handicapped persons would result. Thus, Federal agencies and departments should cooperate in developing standards and policies so that there is a uniform, consistent Federal approach to these sections." S.Rep. No. 93–1297, 93d Cong., 2d Sess., *reprinted in* [1974] U.S. Code Cong. & Ad.News, pp. 6373, 6391.

In light of the rather express congressional intent that a private remedy be available to enforce Section 504, the emphasis on uniformity suggests that Congress contemplated the same scheme with respect to Section 503.

This hypothesis is confirmed by the 1978 Amendments, in which Congress made provision for attorneys' fees for successful Rehabilitation Act litigants. 29 U.S.C. § 794a(b) (Supp.1979). Although by its terms the provision does not refer to Section 503, it is clear that it was enacted with that section in mind. As first introduced in the House, H.R. 12467 provided:

"In any action or proceeding to enforce any provision of section 501, *section 503*, or section 504, the Court may allow any prevailing party * * * a reasonable attorneys' fee as part of the costs." 124 Cong.Rec. H 3961 (daily ed., May 16, 1978) (emphasis added).

And although the Senate deleted specific references to any section of the Act, it intended no substantive change from the House version:

"Subsection (b) of section 505 provides for the allowance by a court, in its discretion, of reasonable attorney's fees as part of costs to the prevailing party, other than the United States. The committee believes that the rights extended to handicapped individuals under title V that is, Federal Government employment, physical accessibility in public buildings, *employment under Federal contracts*, and nondiscrimination under Federal grants— are, and will remain, in need of constant vigilance by handicapped individuals to assure compliance, and the availability of attorney's fees should assist in vindicating private rights of action in the case of *section 502 and 503 cases*, as well as those arising under section 501 and 504." S.Rep. No. 95–890, 95th Cong., 2d Sess. 19 (1978) (emphasis added).

The desire to provide effective means for enforcement of *all* relevant provisions of the Act is underscored by the comments of one of the legislation's key proponents:

"Mr. President, the rights extended to handicapped individuals under title V of the Rehabilitation Act of 1973—Federal Government employment, physical accessibility in public buildings, *employment under Federal contracts*, and non-discrimination under Federal grants—are and will continue to be in need of constant vigilance by handicapped individuals to assure compliance. Private enforcement of these title V rights is an important and necessary aspect of assuring that these rights are vindicated and enforcement is uniform. The availability of attorneys' fees should assist substantially in this respect." 124 Cong.Rec. S15590 (daily ed., Sept. 20, 1978) (remarks of Sen. Cranston) (emphasis added).

While such remarks do not carry the weight of contemporary legislative history, they strongly support the view that Congress contemplated private rights of action for enforcement of Section 503.[10]

Under these circumstances, the Court's review of the legislative history of the statute is guided by the principle that

"[I]n situations * * * 'in which it is clear that federal law has granted a class of persons certain rights, it is not necessary to show an intention to *create* a private cause of action, although an explicit purpose to *deny* such cause of action would be controlling.'" *Cannon v. University of Chicago, supra*, 441 U.S. at 694, 99 S.Ct. at 1956.

---

**10.** Although other indicia of legislative intent are somewhat inconclusive, they are not inconsistent with the Court's view. The 1978 Amendments, it is true, specifically made available the "remedies, procedures and rights" contained in Titles VI and VII, respectively, for violations of Sections 504 and 501, without making any corresponding provision for Section 503. Such action gives rise to a variety of inferences, not the least of which is that Congress assumed such an amendment less necessary in the case of Section 503. In any event, in light of the understanding surrounding enactment of the attorneys' fees provision, this omission certainly cannot be said to represent a *denial* of a private remedy. As the Supreme Court has recently observed:

"The fact that other provisions of a complex statutory scheme create express remedies has not been accepted as a sufficient reason for refusing to imply an otherwise appropriate remedy under a separate section." *Cannon v. University of Chicago*, 441 U.S. 677, 711, 99 S.Ct. 1946, 1965, 60 L.Ed.2d 560 (1979).

Nor does the Court attach great significance to the fact, found to be important by other courts, see *Rogers v. Frito-Lay, Inc.*, 433 F.Supp. 200, 202 (N.D.Tex.1977), that Congress has so far refused to amend Title VII to protect handicapped persons from employment discrimination. The scope of Title VII, which reaches *all* employers of any significant size, public and private, is far broader than that of Section 504, which affects only those employers who contract with the federal government. It is not inconsistent in the least for Congress to have afforded handicapped persons the protection of the latter, while declining to extend the far-reaching coverage of the former.

In light of the statute's clear purpose to aid handicapped persons in securing employment opportunities, application of this principle is appropriate in the context of Section 503. The Congress which first enacted the provision explained its purpose to be:

> "to ensure [that] any qualified handicapped individual shall be given full and fair consideration for employment by any contractor who seeks to contract with the Federal government." S.Rep. No. 93–318, 93d Cong., 1st Sess. *reprinted in* [1973] U.S.Code Cong. & Ad.News 2076, 2123.

Viewed in this light, Section 503, far from being a statute which "[creates a duty] on the part of persons for the benefit of the public at large," *Cannon v. University of Chicago, supra,* 441 U.S. at 692, n.13, 99 S.Ct. at 1955, n.13, is specifically aimed at the problems of the handicapped.[11] Moreover, relaxing the requirement of express legislative intent is particularly appropriate here, because the Supreme Court "[has] frequently recognized the propriety of inferring a federal cause of action for the enforcement of civil rights, even when Congress has spoken in purely declarative terms." *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 61, 98 S.Ct. 1670, 1678, 56 L.Ed.2d 106 (1978). Therefore, despite the absence of any express legislative intent to create a private right of action, the evidence that Congress assumed such a remedy to exist militates in favor of permitting private enforcement.

With respect to the third element of the *Cort* analysis, the Supreme Court has recently observed:

"[A] private remedy should not be implied if it would frustrate the underlying purpose of the legislative scheme. On the other hand, when that remedy is necessary or at least helpful to the accomplishment of the statutory purpose, the Court is decidedly receptive to its implication under the statute." *Cannon v. University of Chicago, supra,* 441 U.S. at 703, 99 S.Ct. at 1961 (footnote omitted).

For many of the reasons discussed above in reference to Section 504, the Court concludes that implication of a private right of action for violations of Section 503 will further the goals of the statute. As Judge Higginbotham noted in *Drennon v. Philadelphia General Hospital, supra,* 428 F.Supp. at 815:

> "The remedy sought in this case, the employment of plaintiff and members of her class in positions from which they were purportedly excluded in violation of the Rehabilitation Act, could not better foster the goals of the legislation in question."

The statute's important purpose to protect handicapped persons from discrimination cannot adequately be achieved through enforcement of administrative remedies, the principal sanctions of which are contract termination, withholding of progress payments, and debarment from future contracting. 41 C.F.R. § 60–741.28 (1978). These rather severe procedures simply do not provide the kind of narrow, specific relief appropriate to remedy individual in-

---

**11.** This Court's conclusion that the major purpose of Section 503 was to prohibit employment discrimination against handicapped persons by federal contractors may differ from the characterizations of other courts which, focusing principally upon the language of Section 503, have concluded that the provision

> "does not make discrimination against handicapped persons in the private sector illegal. Rather, it requires that an 'affirmative action' covenant be inserted in all government contracts which exceed the modest amount of $2,500." *Wood v. Diamond State Telephone Co.,* 440 F.Supp. 1003, 1009 (D.Del.1977). *Accord, Moon v. Roadway Express, Inc.,* 439 F.Supp. 1308 (N.D.Ga.1977). As a matter of

logic, it seems to this Court that implicit in a statute requiring affirmative steps to correct underemployment among a target class is a command that, at a minimum, the class shall not be discriminated against. In the case of Section 503, the accuracy of this assumption is borne out by the legislative history cited in the text, as well as by the underlying administrative regulations, which require contractors to obligate themselves as follows:

> "The contractor will not discriminate against any employee or applicant for employment because of physical or mental handicap in regard to any position for which the employee or applicant for employment is qualified." 41 C.F.R. § 60–741.4 (1978).

**76**

stances of discrimination.[12] Moreover, it can be said that, in light of the cumbersome enforcement procedures available to contracting agencies,

> "the main generating force must be private suits in which, * * * the complainants act not only on their own behalf but also 'as private attorneys general in vindicating a policy that Congress considered to be of the highest priority.'" *Trafficante v. Metropolitan Life Insurance Co., supra,* 409 U.S. at 211, 93 S.Ct. at 367.

The existence of a private remedy for violations of Section 503 will not in any way frustrate the administrative preference for resolution through "conciliation, and persuasion." 41 C.F.R. § 60–741.28(a) (1978). Of course, administrative remedies must first be exhausted.[13] *Drennon v. Philadelphia General Hospital, supra,* 428 F.Supp. at 818. As noted above, once exhaustion is required, the presence of potential judicial enforcement will serve to encourage would-be litigants to settle their grievances at an earlier stage.

■ In light of its evaluation of all of the factors enunciated in *Cort v. Ash,* the Court

finds that Section 503 implicitly authorizes plaintiff to maintain this private enforcement action. He is clearly within the class for whose especial benefit the statute was enacted. Although contemporary legislative history is silent on the subject, subsequent amendments suggest that Congress may have assumed private enforcement was appropriate and available. The existence of a private right of action will enhance the implementation of the statute's objectives, while in no way intruding upon an area more properly the concern of state law.[14]

### III.

■ Defendants' claim that plaintiff cannot maintain a cause of action for alleged violations of the Revenue Sharing Act is quickly dispatched. For that Act, unlike the Rehabilitation Act, expressly provides for a private right of action:

> "Whenever a State government or a unit of local government, or any officer or employee thereof acting in an official capacity, has engaged or is engaging in any act or practice prohibited by this chapter, upon exhaustion of administra-

---

**12.** The administrative regulations also provide for the following relief:

> "*Judicial Enforcement.* In addition to the administrative remedies set forth herein, the Director may, within the limitations of applicable law, seek appropriate judicial action to enforce the contractual provisions set forth in § 60–741.4 including appropriate injunctive relief." 41 C.F.R. § 60–741.28(b) (1978).

However, the scope of "appropriate judicial action" or "appropriate injunctive relief" is unclear. Furthermore, the Court is certain that placing such remedies in the hands of those most interested in pursuing them—handicapped persons aggrieved by potential violations—will be more likely to advance the important aims of the statute.

**13.** *See* note 7, *supra.*

**14.** One final factor discussed in *Cannon v. University of Chicago,* 441 U.S. 677 at 690, n.13, 99 S.Ct. 1946 at 1954, n.13, 60 L.Ed.2d 560 (1979), confirms the Court's conclusion. There, Justice Stevens, reviewing prior decisions in which the Supreme Court had considered the propriety of inferring private remedies, observed that

> "[T]his Court has never refused to imply a cause of action where the language of the statute explicitly conferred a right directly on

a class of persons that included the plaintiff in the case." *Id.* at 690, n.13, 99 S.Ct. at 1954, n.13.

Contrasting such statutes with those which "create duties on the part of persons for the benefit of the public at large," Justice Stevens commented that, in the context of Title IX:

> "There would be far less reason to infer a private remedy in favor of individual persons if Congress, instead of drafting Title IX with an unmistakable focus on the benefited class, had written it simply as a ban on discriminatory conduct by recipients of federal funds or as a prohibition against the disbursement of public funds to educational institutions engaged in discriminatory practices." *Id.* at 690–93, 99 S.Ct. at 1954–55 (footnote omitted).

Applying this distinction to the statute before the Court, it is quite clear that Section 503, which requires federal contractors to "take affirmative action to employ and advance in employment *qualified handicapped individuals,*" falls within the category of statutes conferring direct benefits upon distinct, identifiable classes. Hence, according to the Court's analysis in *Cannon,* this factor makes implication of a private remedy all the more appropriate.

tive remedies, a civil action may be instituted by the person aggrieved in an appropriate United States district court or in a State court of general jurisdiction." 31 U.S.C. § 1244(a) (Supp.1979).[15]

Because the Court has rejected defendants' contention that *Trageser* requires plaintiff to demonstrate that the federal funds received by the County were primarily intended to provide employment for handicapped persons, no such allegation is required in order to maintain an action under the Revenue Sharing Act.

Accordingly, defendants' motion to dismiss is denied in all respects.

---

**15.** For the purposes of this action, the "act or practice prohibited by this chapter" is discrimination against handicapped persons in violation of Section 504 of the Rehabilitation Act, which is rendered a violation of the Revenue Sharing Act by 31 U.S.C. § 1242(a)(1), set forth, *supra* at n.3.