**Norman C. BROWN, Plaintiff,**

v.

**AMERICAN HOME PRODUCTS CORP., Ayerst Laboratories Division, Defendant.**

Civ. A. No. 81–2129.

United States District Court, D. Kansas.

Aug. 28, 1981.

Arthur A. Benson, II, Benson & McKay, Kansas City, Mo., Mark R. Singer, Overland Park, Kan., for plaintiff.

Thomas J. Wheatley, Timothy K. McNamara, Lathrop, Koontz, Righter, Clagett & Norquist, Kansas City, Mo., John J. Jurcyk, Jr., McAnany, Van Cleave & Phillips, Kansas City, Kan., for defendant.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

In June, 1970, plaintiff was hired by defendant as a full-time warehouseman. Plaintiff filled that position for a period of roughly nine years, but in August, 1979, defendant terminated plaintiff's employment. Plaintiff alleges in substance that his termination was precipitated by the fact that plaintiff is a diabetic, and thus a handicapped person within the meaning of the Rehabilitation Act of 1973, 29 U.S.C. § 706(6). Plaintiff further alleges that his termination occurred without efforts by defendant to accommodate plaintiff's handicap.

Plaintiff alleges that defendant is a federal contractor not exempt from the provisions of § 503 of the Rehabilitation Act, codified at 29 U.S.C. § 793, which requires certain federal contractors to "take affirmative action to employ and advance in employment qualified handicapped individuals." § 503(a). Pursuant to § 503(b), plaintiff filed a charge of handicap discrimination with the Office of Federal Contracts Compliance Programs [hereinafter OFCCP]. This agency found the facts to be as stated by plaintiff, and attempted to achieve a reconciliation between plaintiff and defendant, but this attempt was not successful.

Plaintiff then brought this action, alleging a violation of § 503 and praying money damages, reinstatement, back pay and other

relief. Defendant has moved this Court to dismiss the complaint on the grounds that § 503 does not allow plaintiff a private cause of action.

The issue before the Court may be simply stated: Can a private cause of action be implied under § 503 of the Rehabilitation Act?

## STATUTORY BASIS OF SUIT

Section 503 states, in part, as follows:
"*Employment under Federal contracts*

"(a) *Amount of contracts or subcontracts—Provision for employment and advancement of qualified handicapped individuals—Regulations.* Any contract in excess of $2,500 entered into by any Federal department or agency for the procurement of personal property and nonpersonal services (including construction) for the United States shall contain a provision requiring that, in employing persons to carry out such contract, the party contracting with the United States shall take affirmative action to employ and advance in employment qualified handicapped individuals as defined in section 7(7) [29 USCS § 706(7)]. The provisions of this section shall apply to any subcontract in excess of $2,500 entered into by a prime contractor in carrying out any contract for the procurement of personal property and nonpersonal services (including construction) for the United States. The President shall implement the provisions of this section by promulgating regulations within ninety days after the date of enactment of this section [enacted Sept. 26, 1973].

"(b) *Administrative enforcement—Complaints—Investigations—Departmental action.* If any handicapped individual believes any contractor has failed or refuses to comply with the provisions of his contract with the United States, relating to employment of handicapped individuals, such individual may file a complaint with the Department of Labor. The Department shall promptly investigate such complaint and shall take such action thereon as the facts and circumstances

warrant, consistent with the terms of such contract and the laws and regulations applicable thereto." *Id.* Codified at 29 U.S.C. § 793.

On its face, § 503 is a directive to federal contractors to include affirmative action clauses in employment contracts. This section contains an administrative remedy for employees and other handicapped individuals by requiring the Department of Labor to investigate and take action as necessary upon proper complaint. Finally, .§ 503 directs the President to promulgate regulations concerning the affirmative action clause. There is no provision for a private cause of action for violations of the section.

Regulations were duly promulgated for administration of § 503. These may be found at 41 C.F.R. § 60–741, *et seq.* Section 60–741.4 contains an affirmative action clause to be inserted into every covered government contract or subcontract. Section 60–741, Subpart B, contains regulations concerning the complaint procedure and enforcement of the affirmative action clause. Section 741.26 authorizes aggrieved individuals to file written complaints with the Director of the OFCCP. Section 60–741.28 authorizes the Director to take legal action, conduct hearings, and achieve compliance by informal means, including conciliation and persuasion, whenever possible. At no place in the regulations does one find provision for a private cause of action.

In 1978, Congress amended the Rehabilitation Act to include § 505, part of which is pertinent to this action:

"(b) In any action or proceeding to enforce or charge a violation of a provision of this subchapter [29 USCS §§ ˙790 *et seq.*], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." *Id.* Codified at 29 U.S.C. § 794a.

This amendment, however, does not expressly authorize a private suit to enforce violations of § 503.

Notwithstanding the lack of statutory authority, plaintiff claims a private cause of

action may be implied from the statute itself. The question whether a private cause of action may be implied for violations of § 503 has been before many federal courts. Slightly more than one half of them have refused to find an implied private right of action. *See e. g., Moon v. Atchison, Topeka and Santa Fe Ry. Co.*, No. 79–4187 (D.Kan., unpublished, 1980); *Doss v. General Motors Corp.*, 478 F.Supp. 139 (C.D.Ill.1979); *Anderson v. Erie Lackawanna Ry. Co.*, 468 F.Supp. 934 (E.D.Ohio 1979); *Wood v. Diamond State Telephone Co.*, 440 F.Supp. 1003 (D.Del.1977); *Moon v. Roadway Express Inc.*, 439 F.Supp. 1308 (N.D. Ga.1977). Three Circuit Courts of Appeals have addressed the issue, and all of them have refused to imply a cause of action. *Rogers v. Frito-Lay, Inc.*, 611 F.2d 1074 (5th Cir. 1980); *Simpson v. Reynolds Metals Co., Inc.*, 629 F.2d 1226 (7th Cir. 1980); *Hoopes v. Equifax, Inc.*, 611 F.2d 134 (6th Cir. 1979).

A substantial number of federal courts, however, have allowed a private cause of action for violations of § 503. *E.g., Hart v. County of Alameda*, 485 F.Supp. 66 (N.D. Cal.1979); *Clarke v. FELEC Services, Inc.*, 489 F.Supp. 165 (Alas.1980); *Drennon v. Philadelphia General Hospital*, 428 F.Supp. 809 (E.D.Pa.1977); *Duran v. City of Tampa*, 430 F.Supp. 75 (N.D.Fla.1977); *California Paralyzed Veterans Ass'n. v. F.C.C.*, 496 F.Supp. 125 (C.D.Cal.1980); *Chaplin v. Consolidated Edison Co. of New York, Inc.*, 482 F.Supp. 1165 (S.D.N.Y.1980).

The dispositive factor in deciding whether or not a private cause of action exists is the intent of Congress to fix a private remedy for violations of § 503. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) [hereinafter *Touche Ross*]; *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) [hereinafter *TAMA*]. The proper standard to be applied to determine an implied right of action under a statute not explicitly granting one is found in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975), where the Court said:

"In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted,' —that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? ... Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? ... And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? ..." [Citations omitted.]

An analysis of these factors reveals that § 503 does not compel that a private cause of action be implied.

I. *Is plaintiff a member of the class for whose benefit section 503 was enacted?*

Even courts which deny a private right of action under § 503 recognize handicapped persons as a group singled out by Congress in the Rehabilitation Act for special treatment. *Anderson v. Erie Lackawanna Ry. Co., supra; Wood v. Diamond State Telephone Co., supra; Moon v. Roadway Express, Inc., supra.* The purpose of the Act is to give this class of persons special rights. 29 U.S.C. § 701(8). The setting aside of a definite group for special treatment contrasts sharply with the general prohibitory language found in a criminal statute, which does not create a private cause of action. *Cannon v. University of Chicago*, 441 U.S. 677, 690, 99 S.Ct. 1946, 1954, 60 L.Ed.2d 560 (1979) [hereinafter *Cannon*]. The Act does more than create a duty on the part of persons for the benefit of the public at large; it is specifically aimed at the problems of handicapped persons. *Hart v. County of Alameda*, 485 F.Supp. at 75. Nonetheless, it is too simplistic to end the inquiry here; the Supreme Court would have us determine whether § 503 creates any rights in the plaintiff class. *Cort v. Ash*, 422 U.S. at 78, 95 S.Ct. at 2087.

Section 503 creates a duty on the part of federal contractors to provide and adhere to affirmative action clauses in their employment contracts. The stated purpose of the Act is to ensure that any qualified handicapped individual shall be given full and fair consideration for employment by any contractor who seeks to contract with the federal government. On its face, the statute does not make discrimination against the handicapped illegal; it merely directs federal contractors to engage in affirmative action. *Wood v. Diamond State Telephone Co.,* 440 F.Supp. at 1009.

In *Cannon,* the Court held a private cause of action could be implied in the language of § 901(a) of Title IX of the Education Amendments of 1972. This section provided in part that "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance." The Court held that under this language Congress intended more than a broad "ban on discriminatory conduct by recipients of federal funds or as a prohibition against the disbursement of public funds to educational institutions engaged in discriminatory practices." *Cannon,* 441 U.S. at 692–93, 99 S.Ct. at 1955. By using this language, the Court held that Congress intended to create rights in private persons because there was a clear intent to benefit a particular class of people. Similarly, the Court found an implied private right was created under the language of the Voting Rights Act, 42 U.S.C. 1973c, which states that "no person shall be denied the right to vote for failure to comply with [a new state enactment covered by, but not approved under, § 5]." *Allen v. State Board of Elections,* 393 U.S. 544, 554–55, 89 S.Ct. 817, 825–26, 22 L.Ed.2d 1 (1969).

The Court instructed in *Cannon* :

" . . . There would be far less reason to infer a private remedy in favor of individual persons if Congress, instead of drafting Title IX with an unmistakable focus on the benefitted class, had written it simply as a ban on discriminatory conduct by recipients of federal funds or as a prohibition against the disbursement of public funds to educational institutions engaged in discriminatory practices." *Cannon,* 441 U.S. at 690–693, 99 S.Ct. at 1946–1955.

Although § 503 is not worded in precisely the same manner as § 901(a) of Title IX, or the Voting Rights Act, it does require affirmative action on the part of federal contractors, and is drafted with an unmistakable focus on the benefitted class of handicapped people. *Hart v. County of Alameda,* 485 F.Supp. 66, 75 (1979). For that reason, and because the Supreme Court has "frequently recognized the propriety of inferring a federal cause of action for the enforcement of civil rights, even when Congress has spoken in purely declarative terms [*Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 61, 98 S.Ct. 1670, 1678, 56 L.Ed.2d 106]," the first *Cort* factor must be answered in the affirmative.

II. *Is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one ?*

The Supreme Court, in setting forth four factors relevant to determine whether a private remedy is implicit in a statute not expressly providing one, did not decide that each of these factors were entitled to equal weight. By far the central and most important inquiry is whether Congress intended to create a private cause of action, and not whether a court can improve upon the statute that Congress has enacted into law. *Universities Research Association, Inc. v. Coutu,* 450 U.S. 754, 770, 101 S.Ct. 1451, 1461, 67 L.Ed.2d 662 (1981). In fact, recent Supreme Court opinions indicate the intent of Congress to fix a private remedy, or a lack of such intent, is dispositive. *Touche Ross,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82; *TAMA,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146.

As with any case involving the interpretation of a statute, analysis must begin with the language of the statute itself. *Touche Ross,* 442 U.S. at 568, 99 S.Ct. at 2485, and cases cited therein. The language

of § 503 contains no expression of intent to create a private remedy, and no reference to any legal consequence of a violation of § 503 which would cause a court to imply such intent. In *TAMA, supra*, the statute in question provided that certain contracts made in violation of the act were to be void. The Supreme Court held this language implied that the customary legal incidents of voidness would follow, such as a private lawsuit for recission of the void contract. No such implication can be made from the statute at issue here. Employment contracts made without the required affirmative action clause are not declared void by § 503, nor is the failure of a contractor to engage in affirmative action declared to be a breach of the contract. In short, § 503 contains no indication that Congress intended violations of that statute to give rise to a private cause of action.

■ In situations where it is clear that Congress has granted a definite class of persons certain rights, it is not always necessary, however, to demonstrate an intention to create a private cause of action from the language of the statute. *Cort v. Ash*, 422 U.S. at 82, 95 S.Ct. at 2089. Instead, the legislative history of the statute may be scrutinized for evidence that Congress intended private enforcement of the statute. *Cannon*, 441 U.S. at 694, 99 S.Ct. at 1956.

The Supreme Court has recognized that "the legislative history of a statute that does not expressly create or deny a private remedy will typically be equally silent or ambiguous on the question." *Id.* This is the case with § 503. The legislative history of this section is silent as to private enforcement. There was little debate or comment on this section prior to its passage in 1973, save some unilluminating remarks by Senator Humphrey. *Rogers v. Frito-Lay, Inc.*, 611 F.2d at 1094, n.21. However, the failure of Congress expressly to consider a private remedy is not entirely inconsistent with an intent on its part to make such a remedy available. *TAMA*, 444 U.S. at 18, 100 S.Ct. at 246. Most courts which find such a remedy rely on the intent of Congress as expressed in the legislative history

of the Rehabilitation Act Amendments of 1974 [hereinafter the 1974 Amendments], and in the attorney's fees provisions of the Rehabilitation, Comprehensive Services and Developmental Disability Amendments of 1978 [hereinafter the 1978 Amendments].

### A. *The 1974 Amendments*

The 1974 Amendments, as far as is pertinent to this case, focused on redefining the term "handicapped" so as to more forcefully effectuate the policy behind § 503. In essence, the term "handicapped" was made broader by these amendments. Some courts have discovered congressional intent to create a private remedy under § 503 in Senate Conference Report No. 93–1297, 93d Cong., 2d Sess., 25–27 (1974), *reprinted in* 1974 U.S.Code & Admin.News, pp. 6373, at 6390–91. This passage refers to § 504 of the Rehabilitation Act (codified at 29 U.S.C. § 794) and explains:

"... Section 504 was patterned after, and is almost identical to, the anti-discrimination language of Section 601 of the Civil Rights Act ⸝of 1964 [Title VI] ... and Section 901 of the Education Amendments [sic] of 1972 [Title IX] ... This approach to the implementation of Section 504, which closely follows the models of the above-cited anti-discrimination provisions, would ... permit a judicial remedy through a private action."

The report goes on to conclude:

"... that sections 503 and 504 be administered in such a manner that a consistent, uniform, and effective federal approach to discrimination against handicapped persons would result." S.Rep.No. 93–1297, 93rd Cong., 2nd Sess., *reprinted in* 1974 U.S.Code & Admin.News, pp. 6373, 6391.

Those courts which construe these passages to reveal intent on the part of Congress to create a private enforcement remedy reason that "[i]n light of the rather express congressional intent that a private remedy be available to enforce Section 504, the emphasis on uniformity suggests that Congress contemplated the same scheme with respect to Section 503." *Hart v. Coun-*

*ty of Alameda,* 485 F.Supp. at 73. This Court cannot agree. An approach which is consistent as well as uniform with respect to these sections does not necessarily mean the same approach must be taken in regard to the enforcement of each. It is beyond question that § 504 of the Rehabilitation Act embraces a private remedy [*Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979); *Kruse v. Campbell,* 431 F.Supp. 180 (1977); *Cain v. Archdiocese of Kansas,* 508 F.Supp. 1021 (D.Kan.1981)]; but a private action need not be implied under § 503 in order to effectuate the intent of Congress that both §§ 503 and 504 be administered in an effective and uniform manner. As pointed out in *Anderson v. Erie Lackawanna Ry. Co.,* 468 F.Supp. at 939, "[t]he enforcement of section 503 is entrusted to the Department of Labor whereas the enforcement of section 504 is a responsibility of the Secretary of Health, Education and Welfare.... When Congress stated that sections 503 and 504 were to be 'consistent' and 'uniform,' Congress meant that the two responsible agencies were not to work at cross purposes or to duplicate each other's efforts, not that identical methods of enforcement were envisioned." In fact, portions of the Committee Report go on to instruct the Department of Labor and the Department of HEW to coordinate their efforts to enforce §§ 503 and 504. The most that can be said of the Committee Report is that it is ambiguous in its references to private enforcement of § 503.

Furthermore, in written communications between the Senate Committee on Labor and Public Welfare and the Department of Labor in 1974, the Senate Committee expressed its dissatisfaction with the regulations promulgated by the Department of Labor for the implementation of § 503. The Senate Committee discussed at length the inadequacies it felt apparent in the complaint and remedy portions of the regulatory scheme, yet at no point mentioned the desirability of a private remedy for handicapped persons, nor did the Committee refer to a private remedy implicit in the statute. 1974 U.S.Code & Admin.News at

6425–40. Thus, the legislative history behind the 1974 Amendments is not conclusive on the question whether Congress intended to create or deny a private right of action for violations of § 503.

**B.** *The 1978 Amendments*

The 1978 Amendments added § 505 to the Rehabilitation Act (codified at 29 U.S.C. 794a). This section reads, in pertinent part:

"(b) In any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

This section presents the strongest argument in favor of implying a cause of action. The amendment embraces violations of § 503, as well as of other sections of the Act, and authorizes the Court to allow attorney's fees to prevailing parties other than the United States. It is thus implicit that this amendment assumes that private actions may be brought in a court rather than before an administrative agency. Furthermore, the amendment's legislative history underscores the assumption that a private cause of action was authorized for violations of § 503. A Senate report says, in part:

"The committee believes that the rights extended to handicapped individuals under Title V, that is, Federal government employment, physical accessibility in public buildings, *employment under federal contracts,* and nondiscrimination under federal grants—are and will continue to be in need of constant vigilance by handicapped individuals to assure compliance and *the availability of attorney's fees should assist in vindicating private rights of action in the case of section 502 and 503 cases,* as well as those arising under section 501 and 504." S.Rep.No.95–890, 95th Cong., 2nd Sess. at 19 (1978) [Emphasis supplied.]

There also are comments in the Congressional Record made by Senator Cranston, the author of the attorney's fees provision

and sponsor of previous legislation, that private enforcement of rights under the Rehabilitation Act was important and necessary. *Rogers v. Frito-Lay, Inc.*, 611 F.2d at 1097–98 (Goldberg, J., dissenting). Senator Bayh concluded that it was the continuing intent of Congress that Title V of the Rehabilitation Act be privately enforced, and Senator Stafford said that, as handicapped individuals needed to be in constant vigilance to ensure that their rights to employment under federal contracts were enforced, private enforcement of these rights was important and necessary. *Id.*

■■ Section 505 is not a nullity, and may not be rendered meaningless or be disregarded. *Clarke v. FELEC Services, Inc.*, 489 F.Supp. at 168. Nevertheless, federal courts are not courts of general jurisdiction. Limited by the express language of the Constitution, the federal courts can hear a cause of action only if it has been created by statute. *Cannon*, 441 U.S. at 717, 99 S.Ct. at 1967 (Rehnquist, J., concurring). While the district court should give weight to the interpretations by Congress of its own acts, legislative history does not have the controlling force of an enactment of Congress. *Chrysler Corp. v. Brown*, 441 U.S. 281, 300, 99 S.Ct. 1705, 1717, 60 L.Ed.2d 208 (1979); *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969); *F.H.A. v. The Darlington, Inc.*, 358 U.S. 84, 79 S.Ct. 141, 3 L.Ed.2d 132 (1958).

■ Statements by a Senate Committee uttered five years after § 503 was enacted cannot constitute congressional intent to create a private remedy. The legislative history of § 503 is devoid of any statements of intent contemporaneous with its passage. The statements made in association with the 1978 Amendments are ambiguous and cannot create an intent which is not shown to have existed when § 503 was enacted. We agree with the Fifth Circuit Court of Appeals that the legislative history of the 1978 Amendments is "a product of members of a Congress so distant in time from the enacting Congress that we cannot accept their remarks as an accurate expression of

the earlier Congress's intent." *Rogers v. Frito-Lay, Inc.*, 611 F.2d at 1082. *Cf. Cannon*, 441 U.S. at 686, n.7, 99 S.Ct. at 1952 (Court cannot accord non-contemporaneous remarks concerning congressional intent the same weight as contemporary legislative history, private cause of action inferred for different reasons). For these reasons, we decline to hold that Congress intended a private cause of action under § 503.

C. *Is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?*

Congress has provided an administrative procedure to remedy violations of § 503. The implementing regulations under § 503 direct that disputes be resolved by informal means using conciliation and persuasion wherever possible.. 41 C.F.R. § 60–741.-28(a). The regulations do not provide for a private cause of action to enforce violations of § 503.

An administrative procedure premised on an informal and conciliatory means of resolving disputes arising under § 503 is inconsistent with a private cause of action in an adversarial posture in a court of law. "[W]hen legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies." *National Railroad Passenger Corp. v. National Association of Railroad Passengers*, 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974). A judicial remedy could blunt informal conciliation efforts, and is thus inconsistent with the legislative scheme. *Anderson v. Erie Lackawanna Ry. Co.*, 468 F.Supp. at 939.

The Court also notes that the Department of Labor, which is charged with enforcement of the Rehabilitation Act of 1973, has recently taken the position that handicapped individuals do not have the right under § 503 to bring private suits against employers for alleged job discrimination. BNA Daily Labor Report, Current Developments, July 28, 1981, at A–8 to A–9.

D. *Is the cause of action one traditionally relegated to state law?*

Although rendered moot in light of the Court's decision that Congress did not intend § 503 to encompass a private cause of action, it is clear that since the civil war the federal courts have been charged with enforcing the rights of persons to live and work free of unlawful discrimination. *Cannon*, 441 U.S. at 708, 99 S.Ct. at 1963. This charge to the federal courts remains strong despite enactments such as The Kansas Acts Against Discrimination, K.S.A. 44–1001 *et seq.*, which bans discrimination in employment against handicapped people and encompasses a private cause of action. *Van Scoyk v. St. Mary's Assumption Parochial School*, 224 Kan. 304, 580 P.2d 1315 (1978).

Nonetheless, this Court's recognition that the federal courts have a tradition of entertaining suits concerning discrimination in employment means no more than had Congress intended a private cause of action under § 503 this Court would have allowed plaintiff to maintain his suit here.

CONCLUSION

This is not the rare case in which all of the factors the Supreme Court has identified as supportive of an implied remedy are present. The question of an implied private cause of action is basically one of statutory construction, in particular whether Congress intended to create a private right of action. *National Railroad Passenger Corp. v. National Association of Railroad Passengers*, 414 U.S. 453, 94 S.Ct. 690, 38 L.Ed.2d 646. The issue is not whether the Court would prefer to augment the administrative remedy provided by Congress for violations of § 503 with a judicial remedy, or whether judicial remedies are more effective than informal conciliatory measures to provide redress for aggrieved handicapped persons. The issue is whether the Court, within the narrow confines of its statutory jurisdiction, can discern an intent on the part of Congress to confer on handicapped persons like the plaintiff a private cause of action. The statute in this case is silent. The legis-

lative history of the statute and other amendments is ambiguous. When Congress wishes to provide a private remedy, it knows how to do so. *Touche Ross*, 442 U.S. at 572, 99 S.Ct. at 2487. This Court is reluctant, therefore, to imply a cause of action without more evidence of congressional intent.

IT IS BY THE COURT THEREFORE ORDERED that defendant's motion to dismiss with prejudice be and hereby is granted.