The **CALIFORNIA PARALYZED VETERANS ASSOCIATION**, etc., et al., Plaintiffs,

v.

**FEDERAL COMMUNICATIONS COMMISSION et al., Defendants.**

**CALIFORNIA ASSOCIATION OF THE PHYSICALLY HANDICAPPED, INC.**, a California Corporation, Plaintiff,

v.

**FEDERAL COMMUNICATIONS COMMISSION; Columbia Broadcasting System, Inc., a corporation, et al., Defendants.**

Patty Ann **BERKOSKY**, Individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

**DEPARTMENT OF LABOR; Federal Communications Commission; American Broadcasting Company, et al., Defendants.**

Civ. Nos. 79–501–WPG, 79–644–WPG and 79–1633–WPG.

United States District Court, C. D. California.

Aug. 1, 1980.

---

**5.** *Billiteri v. United States Board of Parole*, 541 F.2d 938, 944 (2d Cir. 1976); *United States v.* *Doyle*, 348 F.2d 715, 721 (2d Cir. 1965).

Stanley Fleishman, Beverly Hills, Cal., for plaintiffs.

Gibson, Dunn & Crutcher, David Cathcart, Los Angeles, Cal., Andrea Sheridan Ordin, U. S. Atty., Michael E. Wolfson, Asst. U. S. Atty., Los Angeles, Cal., Barbara Allen Babcock, Mark C. Rutzick, Asst. Attys. Gen., Dept. of Justice, Washington, D. C., Paul Hastings, Janofsky & Walker, Newport Beach, Cal., Donald A. Daucher, Michael A. Hood, O'Melveny & Myers, Los Angeles, Cal., Wilmer & Pickering, Washington, D. C., for defendants.

## MEMORANDUM OF DECISION

WILLIAM P. GRAY, District Judge.

The principal question before this court is whether section 503 of the Rehabilitation Act of 1973, 29 U.S.C. § 793 (1976), implied-

ly authorizes a private suit for damages in federal court. Additionally, the defendants have raised the issue of whether a complainant must exhaust administrative remedies before the Department of Labor prior to initiating a private action. In No. 79–644–WPG, defendant Columbia Broadcasting System also argues that the California Association of the Physically Handicapped ("CAPH") lacks standing to sue. Finally, plaintiffs have asserted a right to attorneys fees based on their claims against the Federal Communications Commission under section 504 of the Rehabilitation Act of 1973.

For the reasons outlined below, this court finds that section 503 does create a private right of action; plaintiffs need not exhaust administrative remedies thereunder; plaintiff CAPH has standing to sue on behalf of its members; and plaintiffs are not entitled to an attorneys fee award against the FCC.

## I. SECTION 503 OF THE REHABILITATION ACT OF 1973

■ Section 503 requires all federal contracts in excess of $2,500 for the procurement of personal property and nonpersonal services to include a clause providing that, "in employing persons to carry out such contract," the private contracting party "shall take affirmative action to employ and advance in employment qualified handicapped individuals . . . ." 29 U.S.C. § 793(a).[1] Any handicapped individual who believes that a contractor is not in compliance with the contract provisions may file a complaint with the Department of Labor. 29 U.S.C. § 793(b). However, section 503 does not expressly provide a private right of action to redress injuries caused by noncompliance with the contract provision. The federal courts have divided on the issue of whether that section creates a private right of action by implication.[2] Although

1. Section 503 reads in full as follows:

"(a) Any contract in excess of $2,500 entered into by any Federal department or agency for the procurement of personal property and nonpersonal services (including construction) for the United States shall contain a provision requiring that in employing persons to carry out such contract the party contracting with the United States shall take affirmative action to employ and advance in employment qualified handicapped individuals as defined in section 706(7) of this title. The provisions of this section shall apply to any subcontract in excess of $2,500 entered into by a prime contractor in carrying out any contract for the procurement of personal property and nonpersonal services (including construction) for the United States. The President shall implement the provisions of this section by promulgating regulations within ninety days after September 26, 1973.

"(b) If any handicapped individual believes any contractor has failed or refuses to comply with the provisions of his contract with the United States, relating to employment of handicapped individuals, such individual may file a complaint with the Department of Labor. The Department shall promptly investigate such complaint and shall take such action thereon as the facts and circumstances warrant, consistent with the terms of such contract and the laws and regulations applicable thereto.

"(c) The requirements of this section may be waived, in whole or in part, by the President with respect to a particular contract or subcontract, in accordance with guidelines set forth in regulations which he shall prescribe, when he determines that special circumstances in the national interest so require and states in writing his reasons for such determination." Pub.L. No. 93–112, § 503, 87 Stat. 393 (1973).

The affirmative action clause is set forth at 41 C.F.R. § 60–741.4(a) (1979). It provides that "the contractor will not discriminate against any employee or applicant for employment because of physical or mental handicap in regard to any position for which the employee or applicant for employment is qualified. The contractor agrees to take affirmative action to employ, advance in employment and otherwise treat qualified handicapped individuals without discrimination based upon their physical or mental handicap in all employment practices . . . ."

2. Cases that have held that section 503 does not create a private right of action include: *Hoopes v. Equifax*, 611 F.2d 134 (6th Cir. 1979); *Rogers v. Frito Lay*, 611 F.2d 1074 (5th Cir. 1980), *aff'g Moon v. Roadway Express, Inc.*, 439 F.Supp. 1308 (N.D.Ga.1977) and *Rogers v. Frito Lay*, 433 F.Supp. 200 (N.D.Ga.1977); *Moon v. Santa Fe Ry. Co.*, No. 79–4187 (D.Kan. March 11, 1980); *Coleman v. Noland Co.*, 79–78–R (W.D.Va. Jan. 18, 1980); *Miglets v. Erie Lackawanna Ry. Co.*, 19 Empl.Prac.Dec. ' 9191, 19 FEP Cases 379 (N.D.Ohio Feb. 28, 1979); *Anderson v. Erie Lackawanna Ry. Co.*, 468 F.Supp. 934 (E.D.Ohio 1979); *Wood v. Diamond State Telephone Co.*, 440 F.Supp. 1003 (D.Del.1977).

the Ninth Circuit Court of Appeals has not addressed the issue, two Ninth Circuit district courts have inferred the right to a cause of action under section 503.[3]

■ The Supreme Court established the analytical framework for determining "whether a private remedy is implicit in a statute not expressly providing one" in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975). The Court identified four relevant factors:

> "First, is the plaintiff 'one of the class for whose especial benefit the statute was enacted,' . . . —that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purpose of the legislative scheme to imply such a remedy for the plaintiff? . . . And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?" *Id.*

While recent Supreme Court· cases have held that the dispositive factor in whether Congress intended to create a private cause of action, *see Touche Ross & Co. v. Reddington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979), those cases have reaffirmed the use of at least the first three *Cort* factors as aids in discerning congressional intent.[4]

The threshold question is whether section 503 was enacted for the benefit of a special class. The language of the statute, itself, requires an affirmative answer. In the words of the opinion of the Court in *Cannon v. University of Chicago*, 441 U.S. 677, 690, 99 S.Ct. 1946, 1954, 60 L.Ed.2d 560 (1979), in considering the same issue with respect to Title IX, the present statute ". . . expressly identifies the class Congress intended to benefit [and] contrasts sharply with statutory language customarily found in criminal statutes . . . and other laws enacted for the protection of the general public." *Id.*

The language of section 503 clearly identifies handicapped individuals as the benefitted class. First, the statute requires federal contractors to "employ and advance in employment *qualified handicapped individuals*." (Emphasis added.) Second, subsection (b) authorizes "handicapped individuals" to file, with the Department of Labor, complaints alleging non-compliance. · Although this language does not strictly track the statutory language that the Supreme Court has identified as most conducive to implication of a private right of action,[5] it

---

Cases inferring a cause of action under section 503 are: *Clarke v. Felic Services*, 489 F.Supp. 165 (D.C.Alaska 1980); *Simon v. St. Louis County*, 497 F.Supp. 141 (E.D. Mo.1978); *Chaplin v. Consol. Edison of N. Y., Inc.*, 482 F. Supp. 1165 (S.D.N.Y.1980); *Hart v. County of Alameda*, 485 F.Supp. 66 (N.D.Cal.1979); *Duran v. City of Tampa*, 430 F.Supp. 75 (M.D. Fla.1977); *Drennon v. Philadelphia General Hospital*, 428 F.Supp. 809 (E.D.Pa. 1977).

**3.** *Clarke v. Felic Services, supra* note 2 and *Hart v. County of Alameda, supra* note 2.

**4.** "It is true that in *Cort v. Ash*, the Court set forth four factors that it considered 'relevant' in determining whether a private remedy is implicit in a statute not expressly providing one. But the Court did not decide that each of these factors is entitled to equal weight. The central inquiry remains whether Congress intended to create either expressly or by implication, a private cause of action. Indeed, the first three factors discussed in *Cort* —the language and focus·of the statute, its legislative history, and its purposes, see 422 U.S., at 78,—are ones traditionally relied upon in determining legislative intent." *Touche Ross & Co. v. Reddington*, 442 U.S. 560, 575-76, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82, approved in *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 23, 100 S.Ct. 242, 248, 62 L.Ed.2d 146, 157 (1979).

**5.** In *Cannon*, the Supreme Court set forth several statutes held to grant a private cause of action which "explicitly conferred a right directly on a class of persons that included the plaintiff in the case." 441 U.S. 677, 690 n.13, 99 S.Ct. 1946, 1954 n.13, 60 L.Ed.2d 560. Defendant ABC contends that because section 503 does not fall into the statutory pattern illustrated by *Cannon* footnote 13, it cannot be concluded that section 503 was enacted for a spe-

nevertheless "unmistakably focus[es] on the benefitted class." *Cannon v. University of Chicago*, 441 U.S. at 691, 99 S.Ct. at 1955.

The plaintiffs in this action are within the benefitted class. Plaintiffs in No. 79–501–WPG are the California Paralyzed Veterans Association, suing on behalf of its members; Paula Zeller, a physically handicapped person who alleges that she is fully qualified for on-screen television employment, and that she has been discriminatorily denied such employment; and Patty Ann Berkosky, a handicapped individual who alleges that she has been denied off-screen employment by the television industry solely by reason of her handicap in violation of section 503. Patty Ann Berkosky makes the same allegation as a plaintiff in No. 79–1633–WPG. In No. 79–644–WPG, plaintiff CAPH is a nonprofit corporation dedicated to preserving the rights of handicapped persons. The CAPH alleges that many of its members are fully qualified for employment in the television industry and have been denied such employment solely by reason of their handicap.

The second *Cort* factor requires an examination of legislative intent. The legislative history surrounding the enactment of section 503 in 1973 fails to reveal whether Congress intended to create or deny a private cause of action. However, "the failure of Congress expressly to consider a private remedy is not inevitably inconsistent with an intent on its part to make such a remedy available." *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. at 246, 62 L.Ed.2d at 154. Therefore, other evidence of congressional intent must be considered. This court concludes that statements by members of Congress during the enactment of the 1974 and 1978 amendments to the Rehabilitation Act, and the passage of the 1978 attorneys fee provision are persuasive evidence of Congress' original intent to provide an individual private action under section 503.

In *Hart v. County of Alameda*, 485 F.Supp. 66 (N.D.Cal.1979), Judge Orrick, after making a careful and thorough analysis, concluded that certain statements in the Senate Conference Report accompanying the 1974 Amendments regarding section 504 of the Rehabilitation Act [6] and the administration of sections 503 and 504 reveal that Congress intended private enforcement of both. One of the statements in the Senate Conference Report upon which Judge Orrick relied is the assertion that "It is intended that sections 503 and 504 be administered in such a manner that a consistent,

cial class. However, this argument ignores much of the other language and reasoning of *Cannon.* The Court contrasted the statutory language conferring a right on a specific class with language "creat[ing] duties on the part of persons for the benefit of the public at large." *Id.* Moreover, in the text of its opinion, the *Cannon* Court referred to *Texas & Pacific R. Co. v. Rigsby*, 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874 (1916), as an example of language creating a benefit for a special class. The Court noted that "the statutory reference to 'any employee of any such common carrier' in the 1893 legislation requiring railroads to equip their cars with secure 'grab irons or handholds,' see 27 Stat. 531, 532, made 'irresistable' the Court's earliest 'inference of a private right of action,'—in that case in favor of a railway employee who was injured when a grab iron gave away." 441 U.S. 677, 689, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560. The language at issue here is at least an explicit reference to a benefitted class as is the *Rigsby* language, and it certainly cannot be said to confer a benefit upon the public at large, except in the most general sense.

Moreover, the clear purpose of section 503 is to aid the special class of handicapped persons in gaining greater employment opportunities. This purpose was stated in the Senate Report which accompanied the enactment of section 503: "[I]ncluded in this title is a provision to ensure any qualified handicapped individual shall be given full and fair consideration for employment by any contractor who seeks to contract with the Federal Government." S.Rep.No.93–318, 93d Cong., 1st Sess., *reprinted in* [1973] U.S.Code Cong. & Admin.News, pp. 2076, 2123.

6. Section 504 of the Rehabilitation Act provides that qualified persons shall not "solely by reason of their handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance or under any program or activity conducted by any Executive Agency . . . ." 29 U.S.C. § 794 (Supp.1978).

uniform and effective federal approach to discrimination against handicapped persons would result." [7]

Of course, the administration of the two sections could be "uniform" and "consistent" without being identical, as was pointed out in *Chaplin v. Consol. Edison Co. of N. Y., Inc.*, 482 F.Supp. 1165, 1169 (S.D.N.Y. 1980). However, the comments by Senator Stafford during the debate over the 1974 Amendments give further support to the conclusion that private enforcement of both sections 503 and 504 was intended. He referred to the above-quoted excerpt from the Senate Report, and then stated:

"As the Senators are aware, the sections I have just cited establish Federal Government policies as they relate to programs receiving Federal financial assistance and the prohibition against discrimination on any basis. It was the committee's intent that the enforcement under sections 503 and 504 would be similar to that carried out under section 601 of the Civil Rights Act and 901 of the Education Amendments of 1972.

"I cannot stress strongly enough the need for strong enforcement of sections 503 and 504 because the discrimination of those individuals with handicaps has been practiced in our society." 120 Cong.Rec. 30551 (1974).

Although mindful of the contrary views of the majority in *Rogers v. Frito Lay*, 611 F.2d 1074 (5th Cir. 1980), this court agrees with Judge Orrick's analysis and conclusions expressed in *Hart* and with Judge Goldberg's dissenting opinion in *Rogers*. Accordingly, it is inferred that Congress intended that section 503 might be privately enforced.

The third *Cort* factor also weighs in favor of inferring the right to a cause of action. "[A] private remedy should not be implied if it would frustrate the underlying purpose of the legislative scheme. On the other hand, when that remedy is necessary or at least helpful to the accomplishment of the statutory purpose, the Court is decidedly receptive to its implication under the statute." *Cannon v. University of Chicago*, 441 U.S. at 703, 99 S.Ct. at 1961. As Judge Goldberg, dissenting in *Rogers*, indicated (611 F.2d at 1102, et seq.), *Cannon* is particularly germane to the third factor's analysis. In the first place, the stated statutory purposes of section 503 are closely analogous to the purposes of Title IX identified by the Supreme Court in *Cannon*. One underlying purpose of section 503 is "to insure [that] any qualified handicapped individual shall be given full and fair consideration for employment by any contractor who seeks to contract with the federal government," S.Rep.No.93–318, 93d Cong., 1st Sess., *reprinted in* [1973] U.S.Code Cong. & Admin.News, pp. 2076, 2123, which is essentially a policy against awarding lucrative federal contracts to persons engaged in discriminatory practices. The other purpose indicated by the legislative history of section 503 is to eliminate employment discrimination against handicapped individuals. 119 Cong.Rec. 6145 (1973) (Remarks of Senator Humphrey). These purposes are strikingly similar to those of Title IX:

"First, Congress wanted to avoid the use of federal resources to support discriminatory practices; second, it wanted to provide individual citizens effective protection against those practices." *Cannon v. University of Chicago*, 441 U.S. at 704, 99 S.Ct. at 1961.

*Cannon* further supports the applicability here of the third *Cort* criterion in that the administrative enforcement schemes under the statute here concerned and under Title IX, which was involved in *Cannon*, are virtually identical.[8] Under each statute, the administrative agency has discretion whether or not to investigate a complaint and, as Justice Stevens said in the opinion for the

---

7. S.Rep.No.93–1297, 93d Cong., 2d Sess. *reprinted in* [1974] U.S.Code Cong. & Admin. News, pp. 6373, 6391.

8. Compare 41 C.F.R. 60.741.24–.28 (1979) with 45 C.F.R. 86.71 adopting by reference 45 C.F.R.

80–6 to 80–11 (1979). *See also* Judge Goldberg's comprehensive comparison of the two administrative enforcement schemes, 611 F.2d at 1105–06.

Court in *Cannon*, the decision not to investigate ". . . often will be based on a lack of enforcement resources, rather than on any conclusion on the merits of the complaint." 441 U.S. at 707, n.41, 99 S.Ct. at 1963, n.41.

Therefore, this court concludes, as did the Supreme Court in *Cannon*, that "The award of individual relief to a private litigant who has prosecuted her own suit is not only sensible but is also fully consistent with—and in some cases even necessary to—the orderly enforcement of the statute." 441 U.S. at 706, 99 S.Ct. at 1962.

The defendants argue that to infer a private remedy will frustrate the Department of Labor's enforcement procedures because those procedures primarily rely upon informal conciliation and persuasion.[9] However, the Department of Labor has stated before this and other courts [10] that section 503 enforcement should include a private right of action and that private enforcement is "consistent with Congress' intent" and would "greatly assist" administrative enforcement. Again, following the guidance expressed in *Cannon*, 441 U.S. at 706, n.41, 99 S.Ct. at 1962, n.41, this court places reliance upon the opinion of the agency charged with the enforcement of a statute when considering whether the allowance of a private right of action would frustrate the administrative scheme.

Analysis of the final *Cort* factor, whether the subject matter involves an area basically of concern to the states, poses little difficulty in light of *Cannon*. Although California law prohibits discrimination against qualified handicapped individuals, Cal.Lab. Code, § 1420(a) (West Supp.1980) prohibitions against invidious discrimination of any sort are the principal concern of the federal government. "Since the Civil War, the Federal Government and the federal courts have been the '*primary* and powerful reliances' in protecting citizens against such discrimination . . . ." *Cannon v. Uni-*

*versity of Chicago*, 441 U.S. at 708, 99 S.Ct. at 1963.

In summary, each of the *Cort* factors weighs in favor of allowing a private right of action. The plaintiffs herein are members of the class of handicapped protected by the Rehabilitation Act of 1973. While contemporary legislative history is silent, subsequent evidence regarding Congress' original intent clearly indicates that Congress contemplated private actions under section 503. Moreover, a private remedy, far from frustrating the administrative scheme, will greatly enhance a handicapped person's ability to obtain specific, individual relief from employment discrimination. Additionally, such a remedy will further the important congressional goal, reflected throughout the Rehabilitation Act, of protecting the fundamental rights of handicapped persons, including the right to be free of employment discrimination by those receiving federal contracts.

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES

■ A requirement that plaintiffs exhaust the administrative remedies authorized by section 503(b) is inappropriate in this case. As was illustrated by the discussion regarding possible frustration of the administrative scheme, *supra*, a private action is not inconsistent with administrative investigation or remedies. The decision in *Cannon*, refusing to require exhaustion of Title IX's similar administrative enforcement scheme, also concluded that the reasoning which led to its finding that the private remedy would not interfere with the administrative remedy compelled its decision to dispense with an exhaustion requirement.

*Cannon* suggests a second reason for rejecting an exhaustion requirement.

"Because the individual complainants cannot assure themselves that the administrative process will reach a decision on

---

9. *See* 41 C.F.R. § 6.741.28(a) (1979). The administrative regulations promulgated under Title IX also stress voluntary compliance procedures. 45 C.F.R. 86.71, adopting by reference 45 C.F.R. § 80.8 (1979); 20 U.S.C. § 1682.

10. *See Chaplin, supra* n.2, 482 F.Supp. at 1172; *Rogers, supra* n.2, 611 F.2d at 1108 (Appendix).

their complaints within a reasonable time, it makes little sense to require exhaustion. See 3 K. Davis, Administrative Law Treatise § 20.01, at 57 (1958)." *Cannon v. University of Chicago,* 441 U.S. 707–08, n.41, 99 S.Ct. at 1963 n.41. In this case, plaintiff, Patty Ann Berkosky, who invoked the administrative procedures promulgated by the Office of Federal Contract Compliance Procedures, has been awaiting a decision since September 8, 1978. On September 5, 1979, plaintiff Berkosky was informed that her case had been sent to the San Francisco Regional Office for reinvestigation. These facts underscore the Supreme Court's concern that the administrative process cannot reach a decision within a reasonable time period, and further convince this court that plaintiffs need not await an administrative decision before pursuing their judicial remedy.

Finally, the Office of Federal Contract Compliance Procedures has taken the position that exhaustion is not a necessary prerequisite to the institution of private section 503 actions. Once again, *Cannon* counsels that great weight should be accorded to the agency position. 441 U.S. at 706 n.41, 99 S.Ct. at 1962 n.41.

### III. *STANDING TO SUE*

■ Defendant CBS (No. 79–644–WPG) contends that the California Association of the Physically Handicapped ("CAPH") lacks standing to sue. An association may derive standing by asserting the injury of its members. *Warth v. Selden,* 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975). "The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *Id.* The allegations of the CAPH herein satisfy that standard.

■ The CAPH alleges *inter alia* that CBS has engaged in "acts, policies, practices, and procedures" which discriminate against qualified handicapped persons, including members of the CAPH, in violation of section 503. This allegation states an injury to members of the CAPH which results directly from violation of section 503 by defendants. Therefore, the CAPH has standing to sue. *See Chaplin v. Consolidated Edison Co. of. N. Y., Inc.,* 482 F.Supp. at 1174–75.

### IV. *ATTORNEYS FEE AWARD*

■ The plaintiffs argue that they are entitled to an award of attorneys fees against the FCC based on their claims under section 504 of the Rehabilitation Act. Attorneys fees are awardable to the "prevailing party" in an action to enforce Title V under section 505, 29 U.S.C. § 794a. The plaintiffs contend that their efforts in this lawsuit prompted the FCC to develop a program that would enhance employment opportunities for handicapped persons in the broadcasting industry. Regardless of the validity of this argument, attorneys fees cannot be awarded. On March 14, 1980, this court dismissed all causes of action against the FCC, including the section 504 claims, for lack of subject matter jurisdiction. Because this court never entertained jurisdiction of the section 504 claims, it will not, and probably cannot, now award attorneys fees.