**CALIFORNIA ASSOCIATION OF the PHYSICALLY HANDICAPPED, INC., et al., Appellants-Petitioners,**

v.

**FEDERAL COMMUNICATIONS COMMISSION and United States of America, et al., Appellees-Respondents,**

**CBS, Inc., et al., Intervenors.**

**Nos. 80–6088, 80–7157 and 80–7482.**

United States Court of Appeals, Ninth Circuit.

Submitted May 6, 1983.

Decided Dec. 8, 1983.

Stanley Fleishman, Los Angeles, Cal., for appellants-petitioners.

Mark A. Chavez, Washington, D.C., for appellees-respondents.

Petitions for Review of the Federal Communications Commission.

Appeal from the United States District Court for the Central District of California.

Before WRIGHT and SCHROEDER, Circuit Judges, and EAST,* District Judge.

EAST, Senior District Judge:

This appeal consolidates an appeal from the District Court's dismissal of an action seeking declaratory and injunctive relief requiring the Federal Communications Commission (FCC) to promulgate regulations in favor of the handicapped, and two petitions for review of FCC orders refusing to promulgate regulations implementing Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Appellants and petitioners argue on appeal that the FCC violated (1) Section 504 of the Rehabilitation Act, (2) the public interest standard of the Communications Act, 47 U.S.C. § 307(c) (1983 Supp.), and (3) the equal protection component of the due process clause of the Fifth Amendment. Appellants also argue that the District Court erred in dismissing their action for lack of subject matter jurisdiction and in denying their motion for attorneys' fees. We find these arguments without merit.

FACTS

In September 1977, the California Association for the Physically Handicapped

---

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

(CAPH) filed a petition with the FCC requesting the institution of rulemaking proceedings. CAPH petitioned the FCC to include the handicapped in its equal employment opportunity (EEO) rules and to give preference to handicapped individuals in ownership and management of broadcast facilities. In addition, CAPH requested that the FCC require its licensees to modify their facilities to accommodate the handicapped.

The FCC filed its report and order on CAPH's petition on March 6, 1980. The FCC declined to adopt the regulations sought by CAPH. Instead, the FCC promised to appoint a "coordinator for broadcasting and the handicapped" to advise the licensees on methods to increase employment of the handicapped. The FCC also stated that it would consider findings of illegal discrimination against the handicapped in reviewing applications for new licenses and license renewals.

CAPH petitioned this court for review of the FCC's report and order on March 26, 1980. At the same time, the California Paralyzed Veterans Association (CPVA) and two individual litigants filed a petition with the FCC for reconsideration of the report and order. On August 4, 1980, the FCC filed a memorandum opinion and order denying the petition for reconsideration and affirming its previous order. CPVA then filed a petition in this court for review of the memorandum opinion and order. The two petitions were consolidated.

While CAPH's rulemaking petition was pending before the FCC, CAPH filed suit in February 1979 against the FCC and CBS. CAPH requested that the District Court order the same relief which CAPH sought before the agency: the promulgation of rules under Section 504 regarding employment of the handicapped and the extension of the EEO rules applicable to women and minorities to the handicapped. After the filing of the FCC report and order on March 6, 1980, the District Court dismissed CAPH's suit against the FCC and CBS. In a decision rendered March 10, 1980, the District Court found that it lacked subject matter jurisdiction in light of the FCC action taken on March 6. The District Court also denied CAPH's motion for attorneys' fees made under Section 505(b) of the Rehabilitation Act, 29 U.S.C. § 794a(b), 496 F.Supp. 125. CAPH then appealed the District Court's decision, which was later consolidated with the petitions for review.

DISCUSSION

1. *Section 504*

Section 504 of the Rehabilitation Act provides that no otherwise qualified handicapped individual, solely by reason of the handicap, shall be subjected to discrimination under any program or activity receiving federal financial assistance.[1] CAPH contends that broadcast licenses are a form of federal financial assistance and that the FCC must therefore issue regulations implementing Section 504.

■ Contrary to CAPH's contention, however, it is now clear that broadcast licenses are not a form of federal financial assistance within the context of Section 504. In *Community Television of Southern California v. Gottfried,* —— U.S. ——, 103 S.Ct. 885, 892, 74 L.Ed.2d 705 (1983), the Supreme Court held that the FCC is not a funding agency and has no responsibility to enforce Section 504. Thus, Section 504 does not require the FCC to issue the regulations which CAPH requests.

2. *Communications Act*

■ CAPH argues next that even if Section 504 does not require the FCC to issue the requested regulations, the Communications Act does impose such a requirement. CAPH contends that the FCC's duty under the Communications Act to pursue the pub-

---

1. 29 U.S.C. § 794 provides, *inter alia:*
No otherwise qualified handicapped individual in the United States, as defined in section 7(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

lic interest [2] requires the agency to establish regulations implementing the national policy in favor of the handicapped as reflected in Section 504 of the Rehabilitation Act. In particular, CAPH argues that the public interest standard requires the FCC to (1) forbid employment discrimination against the handicapped, (2) promote ownership and management of broadcasting facilities by the handicapped, and (3) demand a barrier-free environment for the handicapped in broadcasting facilities.

The Supreme Court's decision in *Gottfried,* however, precludes this argument. The court ruled that Congress had not "intended the Rehabilitation Act of 1973 to impose any new enforcement obligation on the Federal Communications Commission," and that the public interest standard of the Communications Act was insufficient to create any obligation to enforce Section 504 or incorporate that section's standards into the Communications Act. *Gottfried,* 103 S.Ct. at 892 and n. 14.

### 3. *Equal Protection*

CAPH contends that the FCC deprived handicapped persons of equal protection when the agency refused to include the handicapped in its EEO program designed to preclude discrimination against women and racial minorities. CAPH argues that the handicapped should be considered a suspect class, and that under the strict scrutiny standard applicable to a suspect class, the FCC's action should be held unconstitutional. No appellate court, however, has held that the handicapped are a suspect class. *Brown v. Sibley,* 650 F.2d 760, 766 (5th Cir.1981). We decline to be the first.

CAPH argues that even under that rational basis test applicable to distinctions involving non-suspect classifications, the FCC's refusal to include the handicapped in the EEO program was still a violation of equal protection. This argument is without merit. Treating two groups differently does not necessarily violate the equal protection. *See Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). The FCC claimed that in light of problems unique to handicapped persons, setting up an EEO program to monitor employment of the handicapped by FCC licensees required more resources and expertise than was required for similar programs designed to prevent employment discrimination against women and minorities. Because the FCC's justification of its refusal to include the handicapped in its EEO program was reasonable, the FCC did not violate equal protection under the rational basis test. *See McLaughlin v. Florida,* 379 U.S. 184, 191, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964).

### 4. *Subject Matter Jurisdiction in District Court*

CAPH's action sought an order directing the FCC to (1) promulgate a Section 504 regulation, and (2) refrain from denying equal employment opportunities to qualified handicapped persons. Although the Court of Appeals has exclusive jurisdiction to review final orders of the FCC, *see* 28 U.S.C. § 2342(1); 47 U.S.C. § 402(a) (1983 Supp.), CAPH argues that the District Court still erred in dismissing the complaint. According to CAPH, the District Court had jurisdiction under two different theories: (1) through application of 28 U.S.C. § 2347(b)(3); and (2) because CAPH asserted substantial violations of constitutional rights.

Section 2347(b)(3) provides no help to CAPH. This section merely provides for a transfer from the Court of Appeals to the District Court when the appellate court has determined that an agency hearing is not required by law and that a genuine issue of material fact remains unresolved. CAPH offers no authority to support the proposition that § 2347(b)(3) provides the District Court with jurisdiction in the first instance.

---

**2.** 47 U.S.C. § 307(c) (1983 Supp.) provides, *inter alia,* that the FCC is directed by statute to grant an application for renewal of a broadcast license if it finds that the "public interest, convenience, and necessity would be served thereby."

CAPH's second argument also lacks merit. The presence of a constitutional issue is insufficient to grant the District Court jurisdiction where jurisdiction would otherwise exist only in the FCC and the Court of Appeals. In *Writers Guild of America, West, Inc. v. American Broadcasting Co.,* 609 F.2d 355 (9th Cir.1979), *cert. denied,* 449 U.S. 824, 101 S.Ct. 85, 66 L.Ed.2d 27 (1980), this court was presented with an argument similar to CAPH's argument here. In *Writers Guild,* we stated:

> While we agree that the [action of] the FCC presents serious issues involving the Constitution, the Communications Act, and the APA, we nevertheless believe that the district court should not have thrust itself so hastily into the delicately balanced system of broadcast regulation.

*Id.* at 365 (footnote omitted). Statutory and constitutional claims against the FCC are not initially cognizable in federal District Court. CAPH's constitutional claim against the FCC, therefore, was insufficient to give the District Court subject matter jurisdiction.

### 5. *Attorneys' Fees*

CAPH's final argument on appeal is that the District Court erred when it dismissed CAPH's motion for attorneys' fees on the ground that it did not have jurisdiction to grant the motion.[3] While we hold that the District Court did not err in dismissing CAPH's motion, the District Court did err by basing its holding on lack of jurisdiction.

CAPH sought an award of attorneys' fees under Section 505(b) of the Rehabilitation Act. This section provides that a court can award a prevailing party attorneys' fees in "any action or proceeding to enforce or charge a violation of a provision" of 29 U.S.C. §§ 790, *et seq.,* 29 U.S.C. § 794a(b). The Supreme Court, however, has held that Congress' use of the phrase "any action or proceeding" demonstrates its intent to authorize civil suits in federal court solely to obtain an award of attorneys' fees for legal work done in administrative proceedings. *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 66, 100 S.Ct. 2024, 2032, 64 L.Ed.2d 723 (1980).[4] Thus, the District Court erred when it held that it did not have jurisdiction to award attorneys' fees.

Although we would ordinarily remand the case to the District Court for a determination of the attorneys' fees issue, we need not remand where resolution of factual issues is unnecessary. *United States v. Ford,* 650 F.2d 1141, 1144 (9th Cir.1981), *cert. denied,* 455 U.S. 942, 102 S.Ct. 1437, 71 L.Ed.2d 654 (1982). Here, remand is unnecessary. CAPH requested attorneys' fees under Section 505(b) of the Rehabilitation Act. For the reason discussed below, CAPH cannot legally qualify as a prevailing party under Section 505(b).

In *Fitzharris v. Wolff,* 702 F.2d 836 (9th Cir.1983), we discussed two possible elements of a test for determining whether a plaintiff is a prevailing party. The first element—required by our previous decisions—is a factual one: the District Court must determine what the lawsuit sought to accomplish and then determine whether it was accomplished by means of the suit. *Id.* at 838. The second possible element is a legal one: whether there was a legal basis

---

**3.** In view of our decision on the issue of attorneys' fees, we conclude that no party was prejudiced when the panel granted CAPH's counsel's motion to allow counsel to briefly argue the single issue of attorneys' fees. Although CAPH's counsel was the only party present at oral argument, all counsel were notified by phone that the court had granted the limited oral argument. The procedure adopted was merely to facilitate the hearing of this appeal. The suggestions coming after submission for further oral argument are denied.

**4.** In *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980), the Supreme Court interpreted the attorneys' fees provisions of Title VII, 42 U.S.C. § 2000e–5(k). The similar legislative histories and wording of the Title VII and the Rehabilitation Act attorneys' fees sections compel the conclusion that the courts must interpret the "any action or proceeding" language of both statutes in the same manner. *Compare* 110 Cong.Rec. 12724 (1964) (remarks of Sen. Humphrey concerning Title VII) *with* 124 Cong.Rec. 18999–19000 (1978) (remarks of Sen. Stafford concerning the Rehabilitation Act).

for the plaintiff's claim. The First Circuit requires such an element: "If it has been judicially determined that defendants' conduct, however beneficial it may be to plaintiffs' interests, is not required by law, then defendants must be held to have acted gratuitously and plaintiffs have not prevailed in a legal sense." *Nadeau v. Helgemoe,* 581 F.2d 275, 281 (1st Cir.1978). We noted in *Fitzharris* that we had not previously decided whether to adopt this second element, and we found it unnecessary to decide the question at that time since the plaintiff had met both elements. *Fitzharris,* 702 F.2d at 838.

Here, however, the FCC's appointment of a "coordinator for broadcasting and the handicapped" was not required by Section 504 of the Rehabilitation Act.[5] FCC's action, therefore, was gratuitous, at least with respect to the Section 505(b) attorneys' fee provision upon which CAPH relies.[6] Thus, we are now squarely presented with the issue we left open in *Fitzharris.* We now hold that a plaintiff cannot be a prevailing party where a defendant's action is only gratuitous. Consequently, CAPH is not a prevailing party since it fails to meet the legal element of our definition of a prevailing party. The District Court did not err in dismissing the attorneys' fee claim.

The District Court's dismissal of appellants' action is affirmed, and the petitions for review are denied.

AFFIRMED.

---

**5.** The Supreme Court's decision in *Gottfried* clearly states that the FCC is not a funding agency and therefore has no obligation to enforce Section 504. *See* discussion of Section 504 in text above.

**6.** Section 505(b) authorizes an award of attorneys' fees only for actions to enforce Title V of the Rehabilitation Act, 29 U.S.C. §§ 790, *et seq.*

Therefore, unless Section 504 forms the required legal basis for the FCC's action, the action is gratuitous with respect to an award of fees under Section 505(b). Thus, it is irrelevant whether the FCC's action was gratuitous with respect to the Communications Act. Even if the Communications Act required the FCC to take the action, CAPH could not collect.